85 F.3d 639
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Cheryl PUTRA, Dimitri Kontopides, Dimitrios Liaskos,
* Vassilios Liaskos, Defendants-Appellants.
 Nos. 94-10040, 94-10088, 94-10135 and 94-10136.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 14, 1996.
Decided March 5, 1996.
 
 Before: WALLACE, Chief Judge, HUG, and FARRIS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Four codefendants convicted of various criminal violations resulting from their involvement in a lucrative narcotics operation in Hawaii appeal their convictions and sentences. We have jurisdiction under 28 U.S.C. § 1291, and we affirm the convictions and sentences, with the exception of Putra's sentence, which we deal with in a separate opinion remanding for resentencing.
 
 I.
 
 3
 Defendant Cheryl Ann Putra contends that insufficient evidence existed to support her conviction for aiding and abetting by knowingly and intentionally possessing with intent to distribute approximately one ounce of cocaine on May 8, 1992. We review the sufficiency of the evidence to determine " 'whether any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. The test is whether the evidence and all reasonable inferences which may be drawn from it, when viewed in the light most favorable to the Government, sustain the verdict.' " United States v. Terry, 911 F.2d 272, 278 (9th Cir.1990) (citation omitted).
 
 
 4
 We conclude that sufficient evidence existed to support Putra's conviction. Putra does not dispute that she was present during the narcotics transaction; rather, she contends that the Government failed to establish her involvement. However, a government witness involved in the "controlled buy" testified to Putra's involvement. He testified that a woman named "Maria", whom he later identified in court as Putra, responded to his call and handled the money exchanged. The transaction was photographed by surveillance officers. Additionally, the government witness testified that Putra had delivered cocaine to him on several other occasions in her car. Furthermore, the car used during the narcotics exchange was rented under Putra's driver's license the day before, and Putra was listed as the spouse of Vassilios Liaskos on the rental agreement. Finally, testimony established that Vassilios Liaskos was grooming Putra to take over his narcotics business while he went to Greece for the summer. A summary of Liaskos' cellular phone records indicate 26 calls made to Putra between March 23 and May 12, 1992. Taken together, this evidence is sufficient to enable a jury to conclude beyond a reasonable doubt that Putra aided and abetted the May 8 narcotics transaction.
 
 II.
 
 5
 Putra's second contention is that the district court erred in denying her motion for judgment of acquittal based on inconsistent verdicts. We review de novo the legal determination whether a defendant may upset a verdict because it is inconsistent with an acquittal. United States v. Hart, 963 F.2d 1278, 1280 (9th Cir.1992).
 
 
 6
 The rule is well established that an inconsistent verdict is an insufficient ground on which to set aside a verdict. See United States v. Powell, 469 U.S. 57, 64-65 (1984); United States v. Hughes Aircraft Co., Inc., 20 F.3d 974, 977-78 (9th Cir.), cert. denied, 115 S.Ct. 482 (1994). At any rate, we conclude that the verdicts are not inconsistent. While the jury found sufficient evidence to convict Putra of aiding and abetting Vassilios Liaskos on May 8, there are reasons why it may have acquitted her of the conspiracy charge. In addition to the aiding and abetting charge, Putra was charged with participating in a conspiracy beginning in January 1987 until her arrest in May 1992. Quite reasonably, the jury could have found sufficient evidence to convict her of aiding and abetting the May 8 transaction, but not have found sufficient evidence of her involvement in the entire conspiracy. The district court did not err in denying her motion for judgment of acquittal.
 
 III.
 
 7
 Putra's third contention is that the district erred by allowing evidence into trial of Putra's narcotic transactions with Vassilios Liaskos between 1987 and 1992. We review the admission of prior bad acts evidence under Fed.R.Evid. 404(b) for abuse of discretion. United States v. Khan, 993 F.2d 1368, 1376 (9th Cir.1993). We conclude that the court did not abuse its discretion.
 
 
 8
 Putra specifically objected to the admission of the testimony of Robert Blackmon and Richard Haller. However, this evidence was relevant and probative. Not only did the evidence go directly to Putra's participation in the conspiracy in which she was charged with participating, the evidence was also necessary to document the roles of the various other coconspirators. Furthermore, Putra fails to establish that she was prejudiced by the admission of the evidence. See United States v. Simas, 937 F.2d 459, 464 (9th Cir.1991) (defendant must indicate how evidence resulted in unfair prejudice).
 
 IV.
 
 9
 Putra's fourth contention is that her conviction should be reversed because she was not arraigned in person on the fifth superseding indictment, the indictment which included the charge on which she was convicted. This argument is meritless.
 
 
 10
 We held in United States v. Romero, 640 F.2d 1014, 1015 (9th Cir.1981), that a defendant must establish prejudice from a failure to follow Fed.R.Crim.P. 10 in order to be entitled to relief. Putra has not met this burden. "What is necessary is that the defendant know what [s]he is accused of and be able to adequately defend [her]self." Id. Her counsel indicated that he was prepared to proceed on the count and that he had "conferred extensively" with Putra prior to the trial. Furthermore, Putra failed to ask the court to arraign her in person prior to the jury's empanelment. See Fed.R.Crim.P. 10 advisory note 3 (failure to comply with rule is a mere technical irregularity not warranting reversal if not raised before trial).[1]
 
 V.
 
 11
 Defendant Dimitri Kontopides contends that the district court erred by allowing a government witness to testify on redirect examination about Kontopides' prior state arrest and by allowing the Government to introduce evidence of his three prior felony convictions without first balancing the probative value of the evidence against its prejudicial effect. We review the admission of prior bad acts evidence for abuse of discretion. Khan, 993 F.2d at 1376. Neither argument has merit.
 
 
 12
 First, Kontopides "opened the door" to the government agent's testimony on redirect examination by raising the testimony himself on cross-examination. See United States v. Hegwood, 977 F.2d 492, 496 (9th Cir.1992) (if defendant "opens the door," he cannot later complain about subsequent government inquiry into the issue), cert. denied, 113 S.Ct. 2348 (1993). Kontopides introduced the evidence himself by asking the agent whether he had been present at this prior arrest. He cannot complain thereafter when the Government inquired of the agent whether the arrest was a federal or a state arrest. The court did not err by allowing that testimony.
 
 
 13
 Kontopides similarly waived his right to allege unfair prejudice on the court's admission of his three prior felony convictions. See United States v. Williams, 939 F.2d 721, 725 (9th Cir.1991) ("By bringing out the fact of the prior conviction during [ ] direct examination of [defendant], [defendant's] attorney deprived the court and the government of a last chance to reverse their pre-stated positions."). Kontopides' counsel introduced the three prior convictions on direct examination. Furthermore, the court did not allow the Government to question Kontopides on his fourth conviction, concluding that the additional conviction did not add any probative value. The court did not abuse its discretion in allowing the Government to question Kontopides on his prior convictions.
 
 VI.
 
 14
 Defendant Dimitrios Liaskos contends that the district court erred in denying the defendants' motion for a mistrial by concluding that the Government did not have a duty to disclose a debriefing report prepared by a detective which summarized Sergio Pangiotopoulos' post-arrest statements. We review a denial of a mistrial for abuse of discretion, United States v. Chan Yu-Chong, 920 F.2d 594, 599 (9th Cir.1990), and a Brady v. Maryland violation de novo. United States v. Lehman, 792 F.2d 899, 901 (9th Cir.), cert. denied, 479 U.S. 868 (1986). The court did not abuse it discretion.
 
 
 15
 Under Brady v. Maryland, 373 U.S. 83, 87 (1963), "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Impeachment evidence, as well as exculpatory evidence, is favorable evidence. United States v. Gordon, 844 F.2d 1397, 1403 (9th Cir.1988). However, reversal is only required if the evidence is material. Id. "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985).
 
 
 16
 Dimitrios Liaskos has not established that the evidence was material because he has not established a reasonable probability that the result of his proceeding would have been different had the report been disclosed to him earlier. His proffered use of the report is insufficient to undermine the confidence in the outcome of his case. Pangiotopoulos did not provide any evidence against Dimitrios. The court did not err in concluding that no Brady violation was established.
 
 VII.
 
 17
 Dimitrios Liaskos also contends that the district court erred by allowing Pangiotopoulos to testify at his sentencing hearing, thereby allowing into evidence an additional five kilograms of cocaine that Pangiotopoulos allegedly delivered to Dimitrios in 1989 and 1990. We review the district court's decision to allow testimony at a sentencing hearing for abuse of discretion. See United States v. Upshaw, 918 F.2d 789, 791 (9th Cir.1990), cert. denied, 499 U.S. 930 (1991).
 
 
 18
 Dimitrios was given an opportunity to cross-examine Pangiotopoulos at the hearing, and he had ample notice that the court would consider evidence regarding Pangiotopoulos' delivery of cocaine to him. Further, Pangiotopoulos testified consistently at the sentencing hearing with the statements in the presentence report. After the hearing, the district court determined by the preponderance of the evidence that Pangiotopoulos delivered a total of five kilograms of cocaine to Dimitrios. See United States v. Restrepo, 946 F.2d 654, 658-59 (9th Cir.1991), cert. denied, 503 U.S. 961 (1992). The district court did not abuse its discretion in allowing this testimony.
 
 VIII.
 
 19
 Defendant Vassilios Liaskos contends that the district court abused its discretion by denying his motion to dismiss his indictment, or in the alternative to exclude the testimony of George Mihailidis, on the grounds that his Fifth Amendment due process right and Sixth Amendment right to counsel were violated. The court did not abuse its discretion.
 
 
 20
 Although attorney Tashima's representation of Mihailidis after his earlier representation of Liaskos presented a potential conflict and was improper, Liaskos must establish prejudice. He has not established that he was prejudiced by either the Government's intrusion into his attorney/client relationship or by Tashima's early, brief representation of him and his later representation of Mihailidis. The district court found that Mihailidis did not provide Tashima with the source of the cocaine or its intended recipient during Tashima's initial representation of Mihailidis. In fact, Mihailidis did not mention Vassilios Liaskos to Tashima until the debriefing session in August 1992. The court further found that Tashima did not discuss any of his conversations with Liaskos with Mihailidis, Agent Alapa, AUSA Muehleck, or with any government agent or employee. Finally, the court found that nothing Tashima learned during his 1.2 hours of representation of Liaskos was used by the Government to develop evidence or further investigate Liaskos. Liaskos does not establish that these findings are clearly erroneous. As such, we conclude that Liaskos is unable to establish that he was in any way prejudiced. See United States v. Irwin, 612 F.2d 1182, 1185-87 (9th Cir.1980) (mere intrusion into relationship is not enough to violate the Sixth Amendment; the intrusion must substantially prejudice the defendant).
 
 IX.
 
 21
 Vassilios Liaskos next contends that the district court erred by failing to determine on the record that he had a reasonable opportunity to review his presentence report with his counsel prior to sentencing. We review de novo whether the legal requirements of Fed.R.Crim.P. 32 were satisfied. United States v. Maree, 934 F.2d 196, 199 (9th Cir.1991). This claim is meritless.
 
 
 22
 We have held that Rule 32 only requires that the sentencing court "reasonably relies on evidence indicating that a defendant has read the presentence report and discussed it with counsel." United States v. Lewis, 880 F.2d 243, 245-46 (9th Cir.1989). It is also necessary that the defendant establish prejudice and that he make an affirmative allegation that he failed to read the report. See United States v. Davila-Escovedo, 36 F.3d 840, 844 (9th Cir.1994), cert. denied, 115 S.Ct. 953 (1995). Because Liaskos has done neither, we hold that the error, if any, was harmless.
 
 X.
 
 23
 Vassilios Liaskos next contends that the district court erred in imposing a $500,000 fine on him because the record does not establish that he had the ability to pay it. We review the district court's finding that he had the ability to pay for clear error. United States v. Favorito, 5 F.3d 1338, (9th Cir.1993), cert. denied, 114 S.Ct. 1374 (1994).
 
 
 24
 We have reviewed the record, and we conclude that it supports a finding that Vassilios did not establish an inability to pay. The Government put forth much evidence of the lucrative dealings of Vassilios and his family members. He bought expensive real estate and cars with cash, he transferred money out of the country to relatives, and he had the ability to transfer money back into the United States. Furthermore, Vassilios failed to provide the probation office with his financial information prior to his sentencing. Without doing so, Vassilios cannot carry his burden of establishing an inability to pay. See United States v. Soyland, 3 F.3d 1312, 1315 (9th Cir.1993). As such, we conclude that the district court did not clearly err.
 
 XI.
 
 25
 Vassilios Liaskos' final contention is that the district court erred in declining to depart downward on his sentence. It is well established that a district court's discretionary refusal to depart downward from the Sentencing Guidelines is not reviewable on appeal. See United States v. Eaton, 31 F.3d 789, 792-93 (9th Cir.1994). Although Vassilios contends that the court mistakenly believed that it could not depart, the record establishes otherwise. Because we conclude that the record does not establish such a mistaken belief, we will not review the district court's discretionary refusal to depart downward on appeal.
 
 
 26
 AFFIRMED, except as to the sentence for Putra.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We deal with Putra's fifth contention concerning her sentence in a separate published opinion